| | |
|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation, <br><br>      Plaintiff, <br> v. <br><br> The Partnerships And Unincorporated Associations Identified on Schedule "A", <br><br>      Defendants. | **Case No. 1:25-cv-14961-JLA-JTG** <br><br><br> **Honorable Judge Jorge L. Alonso** <br> **Magistrate Judge Jeffrey T. Gilbert** |

## RESPONDING DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND TO STAY MOTION TO DISMISS

Defendants TINGSHANG and TOP5EX (collectively, the "Responding Defendants"), through their attorneys Bayramoglu Law Offices, LLC, hereby submits their opposition to Plaintiff Yiwu Baimei Electronic Commerce Co., Ltd. ("Plaintiff")'s Motion to Enforce Settlement and to Stay Briefing on Motion to Dismiss (Dkt. No. 51). See Dkt. No. 83.

## PRELIMINARY MATTERS

As an initial matter, it is important to identify the specific time frame that Plaintiff intentionally omits to hide its bad faith conduct regarding this motion. Counsel from Bayramoglu Law Offices ("New Counsel") took over the representation for Responding Defendants and emailed Plaintiff's counsel of the change in representation on February 27, 2026 at approximately 11:21am Pacific Time. Declaration of David Silver at ¶ 2. In that email, New Counsel specifically informed Plaintiff to "please direct all correspondence to me in the future." *Id*. at ¶ 3. The same email also requested an "initial offer", thus informing Plaintiff's counsel that any discussions needed to start anew. *Id*. Plaintiff's counsel responded "copy to co-counsel and staff" on February

1

RESPONDING DEFENDANTS' OPPOSITION TO            Case No.. 1:25-cv-14961-JLA-JTG
PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AND TO STAY MOTION TO DISMISS

27, 2026 at approximately 11:29am Pacific Time. *Id*. at ¶ 4. Only after learning about *and acknowledging* the change in counsel, Plaintiff attempted to try to accept the now invalid claim from Responding Defendants' prior counsel on February 27, 2026 at approximately 11:39am Pacific Time. *Id*. at ¶ 5. This was in *direct violation* of New Counsel's instructions to no longer correspond with Responding Defendants' prior counsel, which Plaintiff's counsel was well aware of. Plaintiff's counsel then attempted to inform New Counsel that there had already been an acceptance with Responding Defendant's prior counsel in an email on February 27, 2026 at approximately 11:46am Pacific Time. *Id*. at ¶ 6. A summary of the sequence of events on February 27, 2026 (in Pacific Time) is as follows:

11:21am: New Counsel informs Plaintiff's counsel of the change in representation.

11:29am: Plaintiff's counsel acknowledges the receipt of the email from New Counsel.

11:39am: Plaintiff frantically attempts to retroactively accept an offer from prior counsel in direct violation of the instruction not to contact prior counsel anymore.

11:49am: Plaintiff's counsel attempts to attach the email to prior counsel as evidence that an agreement has been reached.

The sequence of events shows a bad faith intent by Plaintiff to contact counsel that is no longer representing the Responding Defendants, after being expressly instructed not to do so, to try to retroactively accept an offer that Plaintiff knew was no longer valid with the change in representation.

To make matters even worse, after attempting to accept the prior invalid offer, Plaintiff's counsel informed New Counsel that Plaintiff would "shortly forward a settlement agreement." *Id*. at ¶ 7. This never happened. *Id*. When New Counsel questioned Plaintiff's counsel as to what the material terms of the agreement were, Plaintiff's counsel failed to articulate a response. See Dkt.

No. 83-3 at pgs. 7-8. The present motion clearly shows that Plaintiff's counsel has no such response.

Even if Plaintiff wants to claim the acceptance of the prior offer was somehow valid despite the direct violation in contacting the prior counsel and ignoring New Counsel's correspondence indicating a restart of the settlement negotiations, there was still clearly no meeting of the minds. Plaintiff's conduct, including the filing of this present motion, has all been done in bad faith.

## ARGUMENT

Responding Defendants do not dispute Plaintiff's analysis that settlement agreements are enforceable contracts, or that the material terms must be sufficiently definite for the court to ascertain the agreement, or that there must be a "meeting of the minds" of the parties. These are all basic concepts of contract law that are well established. Responding Defendants also acknowledge that email communications, *if sufficiently detailed*, can act as an effective agreement.

The basic rule of contract formation, referred to as the "mirror-image rule," requires that the acceptance strictly comply with the terms set forth in the offer, meaning "there must be mutual assent by the contracting parties on the essential terms and conditions of the subject about which they are contracting." *Loeb v. Gray*, 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342, 86 Ill. Dec. 775 (1985). An acceptance conditioned on the modification of terms in an offer generally constitutes a rejection of the offer and becomes a counter-offer that the original offeror must accept before a valid contract is established. *Id*. "[W]hen one accepts an offer conditionally or introduces a new term into the acceptance, no acceptance occurs; rather, there is a counterproposal requiring acceptance by the offeror before a valid contract is formed. *Id*. at 799-800.

In the present situation, Plaintiff apparently believes that the only material term in an agreement is that of the amount to be paid. Plaintiff does not identify a single additional term that

3

was discussed and apparently argues that no other term in the entire agreement would be considered a material term. Such an interpretation cannot be upheld, especially regarding disputes involving intellectual property. The Court cannot possibly enforce any "agreement" the Plaintiff is requesting be enforced, as the material terms are entirely unclear. There is allegedly an agreement to "settle" the case for $4,000, but to do what? Would a consent judgment be filed or would the case be dismissed? If through a dismissal, would the dismissal be with prejudice, or without prejudice? Are the Responding Defendants agreeing not to challenge the validity of the alleged copyrights? If there is an alleged breach of the agreement, are there liquidated damages? Are the terms of the agreement confidential? Can the agreement be used as an admission of liability? These are a sample of potential terms that could prevent the signing of an agreement and can be considered material terms.

Perhaps the most troubling aspect of the lack of material terms is what happens regarding the allegedly infringing products. Does the agreement to settle for $4,000 also automatically create a permanent injunction against the Responding Defendants from ever selling the products again? Do the Responding Defendants have the permission to continue sales without any future interference by Plaintiff now that the case has "settled." The emails certainly do not consider what will happen to the allegedly infringing products or whether the products can continue to be sold.

Another troubling consideration is that Plaintiff's counsel never sent the proposed written agreement. If the supposed "agreement" is enforceable, does this permit Plaintiff's counsel to add whatever terms they want into an agreement and then force compliance with those terms? The reason why valid contracts must have all *material* terms agreed upon through a meeting of the minds is to prevent the very situation we are now in, where there may have been an attempted (and improper) agreement as to one term, which would then be used to "enforce" any number of abusive

terms that were never previously discussed. Even if an agreement can be binding before being reduced to a writing, Plaintiff cannot reasonably state that the proposed settlement Plaintiff said it would send would not have additional terms, including terms that Plaintiff would refuse to amend. Clearly having their own version of whatever that agreement may say in mind when "accepting" the offer from prior counsel, it cannot be reasonably determined that there was a meeting of the minds as to *all* of the material terms therein, as there is no evidence that any other material terms within that agreement were ever remotely discussed.

The fact is that parties do not settle cases in a vacuum, which includes these "Schedule A" cases. While a monetary amount is certainly a starting point to reaching a resolution, it is certainly not the only material term set out in agreements. Many settlements will fail over disputes on terms entirely unrelated to any compensatory number, which any attorney that has handled any sort of settlement agreements would understand. Agreements are not made without further assurances in addition to any monetary amount, such as a plaintiff wanting to protect its intellectual property from future challenges or infringement or a defendant wanting to protect its products and/or receive assurances that it will not continuously be sued in the future. When the litigation involves intellectual property and the livelihood of a business, the monetary amount alone is hardly the only material term. If Plaintiff truly believes that the monetary amount is the only material term, then Responding Defendants should be able to propose any written agreement they want without any changes by Plaintiff, so long as the compensatory number remains the same. Responding Defendants are certain that would not be the case and challenges Plaintiff to state otherwise.

Plaintiff's case law is also inapposite to the present situation. The *LifeWorks* case had the contract enforcement denied. The *Leibowitz v. Trebels* case had a multi-point term sheet in addition to the monetary amount being discussed. The *Pohl v. United Airlines* case involved attorneys

5

discussing specific language for a settlement agreement with all terms being conveyed to the party. The *Allscripts Healthcare* case also had the enforcement of the agreement denied despite having a term sheet and discussions regarding a comprehensive contract. The only apparent case that had an enforcement approved without a term sheet being provided is the *Seko Worldwide* case, but the only disputes there as to the terms was a choice of law provision and whether the monetary amount was contemplated in USD or Indian Rupees despite the communications indicating USD. Here, the issue is not about minor differences in fluctuating conversion rates, but whether the agreement, under the circumstances, was validly accepted to begin with and whether there was sufficient other material terms discussed to create an enforceable agreement. This current situation and dispute was not contemplated in the *Seko Worldwide* case.

Furthermore, the *Allscripts Healthcare* case expressly distinguishes *Seko Worldwide* when stating that "only that the *inclusion* of such an express condition *prevents* a court from holding that a preliminary agreement was binding, not that the *absence* of such a condition *suffices* to show that an agreement was binding" *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 448 F. Supp. 3d 898, 906 (N.D. Ill. 2019) (emphasis in original). Plaintiff's attempt to use the *Seko Worldwide* decision to conclusively decide that the single monetary term was a binding agreement simply because there was no express statement that a writing is required is a misreading of the ruling of that case.

"[T]he omission of crucial terms is powerful evidence that no contract was intended." *Allscripts Healthcare*, 448 F. Supp. 3d at 905 (citing *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 588 (7th Cir. 2012) (modification in original and internal quotation marks omitted)). "Indeed, a 'contract requires mutual assent (determined by the [parties'] objective conduct) as to *all* material terms,' and the '[i]ndefiniteness of a material term renders a contract unenforceable

when the court cannot reasonably supply the missing term.'" *Id.* (citing *Citadel* 692 F.3d at 589). Here, even if Plaintiff believes their retroactive acceptance and unauthorized correspondence is somehow valid, there are numerous material terms missing from the discussions, which the Court cannot reasonably supply without drastically altering the rights of one of the parties.

### A FURTHER STAY IS IMPROPER

Regarding the requested stay (that was already prematurely granted relating to the contemporaneously filed motion for jurisdictional discovery without providing Responding Defendants an opportunity to respond), Plaintiff's arguments are non-sensical. Plaintiff references the contemporaneously filed motion for jurisdictional discovery, but the present motion to enforce settlement is specifically against Defendants TINGSHANG, and TOP5EX, while the Motion for Jurisdictional Discovery is specifically against Defendants BUZHI and ZHIZHOU. The two motions do not overlap in defendants, so the determination of one motion would not actually have any impact on the determination of the other.

Plaintiff also attempts to claim that the Court has already determined that Plaintiff is likely to succeed on the merits by granting and extending the TRO. However, the original TRO and extension were filed *under seal* and *without notice* with the deliberate intention of depriving defendants the opportunity to respond. The Court is not bound by its prior decisions on misleading and unopposed facts. Had Responding Defendants been able to respond, or had Plaintiff been forthcoming with its representations to the Court, then the Court would have been aware of the glaring deficiencies in both jurisdiction and irreparable harm arguments. Without duplicating arguments to an unnecessary extent, Plaintiff apparently sat on the alleged infringement evidence for over two years without any action, clearly negating any irreparable harm arguments, and

Responding Defendants' pending Motion to Dismiss clearly outlines the substantial jurisdictional deficiencies, which Plaintiff would obviously rather avoid than respond to.

Plaintiff's public policy argument is also absurd, as the public interest in settling disputes without litigation is clearly negated by Plaintiff's own litigation in an attempt to enforce the purported settlement. Not to mention, such a public interest has absolutely nothing to do with whether a stay is proper. The Court can easily make the determination on the present motion, which would not have impacted the schedule of the pending Motion to Dismiss had Plaintiff filed a timely response. Should the Court be inclined to grant the present motion, then *part* of the Motion to Dismiss could be moot and the remainder can move forward without issue. Should the Court deny the present motion, then the Court would be making the determination on the Motion to Dismiss anyway.

Rather than simply responding to the Motion to Dismiss, Plaintiff decided to file multiple motions to delay the Motion to Dismiss as long as possible. The only party that benefits from a stay is Plaintiff, as Plaintiff has neglected to timely file a response to the Motion to Dismiss (even after receiving an extension). Plaintiff could have and should have filed a timely response instead of initiating these improper delay tactics at the last minute. Plaintiff's own conduct created a situation where Plaintiff would be prejudiced if its own request for a stay was denied. Self-imposed hardship should not be considered. Unfortunately, the Court granted a stay in a minute order without factual or legal reasoning and without allowing Responding Defendants a chance to be heard on the subject.

Now Responding Defendants' Motion to Dismiss has been stayed indefinitely when the threshold issue of jurisdiction is still being challenged. As a result, Responding Defendants will have to suffer substantial hardship in being forced to greatly increase their litigation costs for a

RESPONDING DEFENDANTS' OPPOSITION TO        Case No.. 1:25-cv-14961-JLA-JTG
PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AND TO STAY MOTION TO DISMISS

case that should not have gone forward to begin with and will be unable to have the determination that could have them dismissed from the lawsuit entirely. All while Plaintiff continues to try to increase litigation costs, deprive Responding Defendants of access to their business and assets, and extort a settlement fee for a case Responding Defendants should be dismissed from.

## RESPONDING DEFENDANTS SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES

The Court may award attorney's fees under 28 U.S.C. § 1927 for Plaintiff's role in unreasonably and vexatiously multiplying the proceedings. This motion was filed on the last day to respond to the Motion to Dismiss with the express intention of delaying the proper adjudication of that motion and unnecessarily increasing the litigation costs of Responding Defendants. Plaintiff engaged in unauthorized communication to try to retroactively agree to an invalid offer. Plaintiff is fully aware there was no meeting of the minds on all material terms, yet filed the present motion anyway solely for the purpose of increasing Responding Defendants' litigation costs and delaying the Motion to Dismiss. Responding Defendants believe Plaintiff's position to be unreasonable under the circumstances. Unfortunately, Plaintiff's conduct was seemingly rubber stamped by the Court and has thus created substantial unnecessary litigation costs for Responding Defendants. Responding Defendants request the Court to look into the actual facts of this matter and make a new determination regarding the appropriateness of Plaintiff's conduct herein.

## CONCLUSION

Plaintiff's attempt to enforce the purported settlement is a culmination of bad faith conduct by Plaintiff that should not be tolerated. There is clearly no meeting of the minds on all material terms as required by Illinois contract law. Plaintiff's present motion is nothing more than an excuse to pursue its dilatory tactics by delaying Responding Defendants' Motion to Dismiss. Therefore,

Responding Defendants request Plaintiff's motion be denied in its entirety and Plaintiff be considered to have conceded Responding Defendants' Motion to Dismiss for failure to timely respond.

DATED this 20th day of March 2026.

**BAYRAMOGLU LAW OFFICES LLC**

By: */s/ David Silver*
DAVID SILVER, ESQ.
david@bayramoglu-legal.com
1540 West Warm Springs Road, Suite 100
Henderson, Nevada, 89052
*Attorneys for TINGSHANG and TOP5EX*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of March 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: */s/ David Silver*
DAVID SILVER, ESQ.

RESPONDING DEFENDANTS' OPPOSITION TO  Case No.. 1:25-cv-14961-JLA-JTG
PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AND TO STAY MOTION TO DISMISS